Filed 1/29/16  P. v. Moore CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>MICHAEL STUART MOORE,<br><br>        Defendant and Appellant. | A143728<br><br>(San Mateo County<br>Super. Ct. No. SC081574A) |

After the trial court denied his motion to suppress, defendant Michael Stuart Moore pleaded no contest to one count of possession of methamphetamine for sale.  He was sentenced to five years, half of which would be spent on supervised release.  Defendant now appeals, arguing (1) the trial court erred in denying his motion to suppress and (2) the terms of his supervised release are unconstitutionally vague.  We affirm the trial court's order on the motion to suppress and also find the conditions of supervised release pass constitutional muster.  However, we modify one of the conditions set forth in a minute order to reflect the conditions orally imposed by the trial court.

## I.  BACKGROUND

On August 6, 2014, defendant was charged by information with two counts of possession of methamphetamine for sale (Health & Saf. Code, § 11378), one count of possession of a billy club (Pen. Code, § 22210), two counts of possession of drug paraphernalia (Health & Saf. Code, former § 11364.1), and one count of unlawful use of methamphetamine (*id.*, § 11550, subd. (a)).  The charges stemmed from two arrests, one on January 4, 2014, and the other on April 24, 2014.  As to the methamphetamine

possession charges, the information alleged defendant had suffered two prior convictions under Health and Safety Code section 11370.2, subdivision (c).

Officer Bret Mueller made both the January 4 and April 24 arrests. On January 4, Mueller followed a four-door sedan, in which defendant was a passenger, into a residential neighborhood in Belmont. The police had numerous prior contacts with the registered owner of the vehicle, and the driver appeared lost. After the vehicle pulled into a driveway, Mueller had a brief conversation with defendant and noticed he was nervous and sweating. Mueller drove a short distance away and continued to observe defendant and the driver of the vehicle, Yvonne McEnnerney. Mueller approached defendant and McEnnerney again, and asked them why they were there. McEnnerney gave conflicting answers. During the discussion, residents of the property arrived and stated they did not recognize defendant or McEnnerney.

Mueller then searched the area near where the car was parked. He found a black duffel bag that was partially open. Looking inside, Mueller saw a glass pipe commonly used to ingest methamphetamine. Defendant said the bag belonged to him. Mueller placed defendant under arrest and searched him. On defendant's person, Mueller found $907 in cash, as well as a key to a locked compartment of the duffel bag. Inside the locked compartment, Mueller found a digital scale, a collapsible baton, and four individually wrapped packages containing about 32 grams of methamphetamine.

Defendant was charged in connection with the January 4 incident on January 6, 2014. Mueller attended a preliminary hearing on the matter on March 6, 2014. Defendant failed to appear at that hearing, and a bench warrant was issued. Defendant appeared before the court a few days later, on March 14, 2014, and the bench warrant was withdrawn. Mueller later testified he was not aware the arrest warrant had been resolved. He ran defendant's name through dispatch every few weeks, but the warrant never appeared in the system. Mueller also tried contacting the courts about the warrant, but never received a response.

On April 24, 2014, about 2:30 p.m., Mueller observed defendant walking out of a parking lot in Belmont. Defendant looked at Mueller's marked patrol vehicle, stopped,

"made a couple hesitation movements," and then walked forward. Mueller drove past defendant, and decided to contact him based on their prior interaction. After getting out of his vehicle, Muller observed defendant walking through an alleyway into the rear parking lot of a business complex. Defendant looked at Mueller and then ran away from him. Mueller yelled out, "Stop. Police." Defendant stopped and came back towards Mueller from some bushes.

At this point, defendant was agitated and excited. He asked Mueller why he was being stopped. Defendant was sweating profusely, and he had "white froth" at the side of his mouth. Mueller also noticed a mark on defendant's forearm, which Mueller believed to be a fresh needle injection site. Mueller checked defendant's pulse, examined his pupils, and determined defendant was under the influence of a controlled substance. Defendant was placed under arrest. Upon searching defendant's person, Mueller found $850 in cash, as well as five to seven cell phones. Another officer searched the location where defendant had been running away from Mueller and located a Ziploc bag containing several packages of methamphetamine and three unused syringes. The methamphetamine weighed about 10.8 grams.

At a preliminary hearing held on July 24, 2014, defendant moved to suppress the evidence discovered at the January 4 and April 24 arrests. The trial court denied both motions. As to the April 24 arrest, the trial court found Mueller had a reasonable belief that "something was afoot," and thus could conduct a temporary detention. On October 6, 2014, defendant filed a renewed motion to suppress as to both the January 4 and April 24 incidents. On November 6, 2014, the trial court granted the motion, but only as to the January 4 incident.

As part of a plea bargain, defendant pleaded no contest to possession of methamphetamine in connection with the April 24 incident. Defendant also admitted to one of the prior offenses. All other charges were dismissed. The trial court sentenced defendant to five years, half of which were to be served in county jail and the other half on supervised release. Among the various conditions of supervised release, defendant was ordered to "abstain from the use and[/]or possession of any alcohol and controlled

substances" and "not possess any dangerous or deadly weapons, firearms[,] or ammunition."

## II.  DISCUSSION

### A. *Motion to Suppress*

Defendant argues the trial court erred in denying his motions to suppress the evidence discovered during the April 24 incident.  Defendant's contentions raise mixed questions of law and fact that are subject to independent review.  (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)  We conclude the motion to suppress was properly denied as to the April 24 incident.

"The Fourth Amendment to the United States Constitution prohibits seizures of persons, including brief investigative stops, when they are 'unreasonable.'  [Citations.] . . . A seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away."  (*People v. Souza* (1994) 9 Cal.4th 224, 229 (*Souza*).)  A police officer may conduct a brief, investigatory stop of a person when the officer has a reasonable suspicion criminal activity is afoot.  (*Terry v. Ohio* (1968) 392 U.S. 1, 30.)  Put another way, a detention is reasonable "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*Souza*, at p. 231.)  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123 (*Wardlow*).)

As all parties agree, defendant was detained upon complying with Officer Mueller's command to stop on April 24.  Thus, the pertinent question on appeal is whether Mueller had a reasonable suspicion defendant was involved in criminal activity before ordering him to stop.  At the preliminary hearing, Mueller articulated several reasons why he detained defendant.  Foremost among those reasons was that defendant

4

ran away from Mueller when he approached.  Defendant argues his unprovoked flight, without more, is insufficient to justify a detention.

Our Supreme Court has addressed the issue of whether a suspect's flight is sufficient to support a reasonable suspicion for a brief investigative stop in *Souza*, *supra*, 9 Cal.4th 224.  In that case, a police officer was patrolling a high crime area about 3:00 a.m. and noticed the defendant standing near a parked car talking to someone in the car.  (*Id.* at p. 228.)  The officer pulled up behind the car and activated his patrol car's spotlight, at which point the defendant took off running.  The officer stopped the defendant and, during a pat-down search, discovered cocaine on his person.  (*Ibid.*)  In assessing the validity of the stop, the court held "that the possibility of an innocent explanation for a person's flight from a police officer does not mean that the flight is irrelevant in determining reasonable cause to detain."  (*Id.* at p. 233.)  However, it also rejected the contention that flight alone is sufficient to justify a detention.  (*Id.* at pp. 235–236.)  To accept such a bright-line rule would "run afoul of the United States Supreme Court's admonition that courts take into account 'the totality of the circumstances.' "  (*Id.* at p. 237.)  Taking into account the defendant's sudden flight from police, along with the time of night and the area's reputation for criminal activity, the court concluded a brief detention of the defendant was justified.  (*Id.* at pp. 240–242.)

A few years later, the United States Supreme Court reached a similar conclusion in *Wardlow*, *supra*, 528 U.S. 119.  There, the court found an officer was justified in suspecting the defendant was involved in criminal activity based on his unprovoked flight upon noticing the police and his presence in an area of heavy narcotics trafficking.  (*Id.* at pp. 124–125.)  The court stated:  "Headlong flight—wherever it occurs—is the consummate act of evasion:  It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  (*Id.* at p. 124.)  The court also rejected the contention that courts should find a Fourth Amendment violation where there could be innocent reasons for flight.  (*Wardlow*, at p. 125.)  The court explained a temporary stop was a relatively minimal intrusion and the Fourth Amendment accepts the risk of stopping innocent persons in connection with more drastic police action.  (*Wardlow*, at p. 126.)  Concurring

in part and dissenting in part, four justices stated the majority wisely declined to endorse a per se rule which would allow temporary detentions in all cases involving flight. (*Ibid.* (conc. & dis. opn. of Stevens, J.).)

In this case, defendant's unprovoked flight upon seeing a marked police car was a significant factor in determining whether Officer Mueller had reasonable cause to suspect defendant was engaged in criminal behavior. Even if flight alone is insufficient to justify the detention, other factors also supported Mueller's decision to stop defendant. At the preliminary hearing, Mueller stated he was suspicious of defendant because of their prior interaction on January 4, during which he found defendant was in possession of a significant quantity of methamphetamine. "[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." (*U.S. v. Santos* (10th Cir. 2005) 403 F.3d 1120, 1132.) In this case, Mueller's knowledge of defendant's history, along with defendant's flight were sufficient to justify a reasonable suspicion of ongoing criminal activity.[1]

Defendant argues that because he knew Officer Mueller, and he knew Mueller had unlawfully detained him in a prior stop, it is not surprising he would view Mueller with caution. But as our Supreme Court held in *Souza*, the possibility there is an innocent explanation for a defendant's flight does not mean flight is irrelevant in a reasonable suspicion analysis. (*Souza*, *supra*, 9 Cal.4th at p. 233.) In light of the fact Mueller had previously arrested defendant for possession of methamphetamine, Mueller could have reasonably concluded defendant fled due to his participation in ongoing criminal activity, rather than his fear of an unwarranted search. Moreover, at the time of the April 24

---

[1] We agree with defendant that many of the other factors raised by Officer Mueller and the Attorney General are not relevant to the reasonable suspicion calculus. Mueller had no reason to believe there was an outstanding bench warrant for defendant since he had been unable to find one in the system. Defendant's nervous behavior and hesitation prior to flight is also of questionable value. (See *U.S. v. Montero-Camargo* (2000) 208 F.3d 1122, 1136 ["reliance on 'suspicious' looks can so easily devolve into a case of damned if you do, equally damned if you don't"].) In any event, defendant's hesitation movements were merely a precursor to flight. Thus, if flight alone is insufficient to raise a reasonable suspicion, then flight plus hesitation movements are also insufficient.

incident at issue, the trial court had not yet ruled on the illegality of the prior stop. Thus, on April 24, Mueller could have had a good faith belief the evidence found during that prior stop was legally obtained. (Cf. *People v. Willis* (2002) 28 Cal.4th 22, 29–34 [discussing the good faith exception to the exclusionary rule].) Even if Mueller had known his prior stop was unlawful, it is unclear how he could be expected to suppress his own knowledge of the evidence found during that stop.

For these reasons, we conclude the trial court properly denied defendant's motion to suppress the evidence obtained during the April 24 stop.

## B. *Probation Conditions*

Next, defendant challenges the conditions of his supervised release requiring him to (1) abstain from the use or possession of alcohol and controlled substances, and (2) not possess dangerous or deadly weapons, firearms, or ammunition.

As an initial matter, defendant argues these conditions should be modified to include an express knowledge requirement. We have rejected substantially similar challenges in the past. (See *People v. Gaines* (2015) 242 Cal.App.4th 1035.) As we have previously explained, "not every category condition is vague merely because it does not require the probationer to know a particular association, place, or item is within the prohibited category. A probation condition passes constitutional muster so long as it spells out with reasonable specificity what is prohibited in such a way that persons of common intelligence need not guess at its meaning or differ as to its application." (*Id.* at p. 1038.) Such is the case here. It is unclear how defendant could possibly be confused about what the conditions at issue prohibit him from doing. Nor are we persuaded that defendant could be held in violation of his supervised release in the highly unlikely event he unknowingly consumes alcohol or unknowingly possesses a firearm.

Next, defendant contends there is a discrepancy between the trial court's minute order, which prohibits defendant from owning or possessing dangerous or deadly weapons, and the trial court's oral pronouncement, which merely restricted possession. Defendant argues that when the written version of a release condition conflicts with the trial court's oral pronouncement, the court's oral pronouncement should control. The

7

Attorney General concedes this point.  We agree with both parties (see *People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073), and conclude the written weapons condition must be modified to reflect the conditions orally imposed by the court.

We also modify the controlled substances condition to clarify that defendant may possess such substances with a valid prescription.

### III.  DISPOSITION

The judgment is affirmed.  The conditions of supervised release are modified to reflect the trial court's oral pronouncement, and to clarify defendant may possess controlled substances with a valid prescription.

_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Dondero, J.